IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HARRELL E. BRANNAN, THOMAS PTACEK, FORBES ROBERTSON III, and CARMEN PEARSON, Individually And On Behalf Of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>E.I. DUPONT DE NEMOURS & COMPANY,<br><br>Defendant. | <br><br><br><br><br><br><br>CIVIL ACTION NO. _____<br><br>CLASS ACTION |
| **CLASS ACTION COMPLAINT FOR MONETARY, DECLARATORY AND INJUNCTIVE RELIEF**<br>**(Jury Trial Demanded)** ||

Class Representative Plaintiffs, on their own behalf and on behalf of all other Class members similarly situated, by and through their undersigned counsel, hereby file this Class Action Complaint on behalf of the residents of the State of Arizona and the State of Nebraska against Defendant, E.I. DuPont De Nemours & Company (hereinafter "DuPont"). In support of said Complaint, Plaintiffs state as follows:

### NATURE OF CLASS ACTION

1.      This is a state class action brought on behalf of all Arizona consumers and Nebraska consumers who have purchased cooking utensils and household appliances which were treated with or contained a non-stick coating commonly known as "Teflon." DuPont has manufactured, supplied, marketed and sold Teflon for over 50 years to consumers worldwide, including consumers in

1

Arizona and Nebraska. DuPont has continued to manufacture, distribute, sell and market Teflon as being safe even though DuPont knew or reasonably should have known that Teflon can release harmful and dangerous substances, including a chemical that has been determined to "likely" cause cancer in humans.

2. This is a class action seeks relief from DuPont for its failure to disclose or warn consumers of the potential for serious health risks resulting from the use of cooking and household appliances manufactured with the Teflon coating. The products at issue are widely used for cooking and baking and include but are not limited to pots and pans, other cookware, bakeware, housewares, household appliances, and other cooking products.

3. This state class action is brought by Plaintiffs and those similarly situated to Plaintiffs to require DuPont to:

(i) pay damages to the class members who have purchased cooking products containing DuPont's Teflon product by either replacing or reimbursing Plaintiffs for the cost of the products;

(ii) disgorge itself of the profits DuPont made from the sale of this product based on its misrepresentation through omission or acts;

(iii) create a fund for independent scientific researchers to further investigate the potential for adverse health effects to consumers who have used cooking and household products containing Teflon;

(iv) require that DuPont provide a warning label on all cooking and household products regarding the potential adverse and harmful effects of Teflon; and

(v) enjoin DuPont from continuing to mislead customers into believing that the Teflon product is safe and without risks.

## THE PARTIES

4. Plaintiff, Harrell Brannen, is a resident of Scottsdale, Arizona and at all times material hereto, was a consumer of cooking and household products containing or made with DuPont's Teflon product.

5. Plaintiff, Thomas Ptacek, is a resident of Scottsdale, Arizona and at all times material hereto, was a consumer of cooking and household products containing or made with DuPont's Teflon product.

6. Plaintiff, Forbes Robertson, III, is a resident of Tempe, Arizona and at all times material hereto, was a consumer of cooking and household products containing or made with DuPont's Teflon product.

7. Plaintiff, Carmen Pearson, is a resident of Lincoln, Nebraska and at all times material hereto, was a consumer of cooking and household products containing or made with DuPont's Teflon product.

8. DuPont is a Delaware corporation. DuPont manufacturers, markets and distributes Teflon throughout the State of Delaware for the sale to consumers.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.A. §1332(a) based upon diversity jurisdiction. This Court has diversity subject-matter jurisdiction over this class action pursuant to the Class Action Fairness Act of 2005, which, inter alia, amends 28 U.S.C. § 1332 to add a new subsection (d) conferring federal jurisdiction over class actions where, as here, "any member of a class of plaintiffs is a citizen of a State different from any defendant" and the aggregated amount in controversy exceeds five million dollars ($5,000,000). See 28 U.S.C. §1332(d)(2) and (6). This Court has personal jurisdiction over the parties because Plaintiffs and the Class submit to the jurisdiction of the Court and Defendant is incorporated in Delaware.

10. DuPont, through its headquarters in Delaware, made marketing and sales representations to consumers in Arizona and Nebraska regarding its Teflon products.

## GENERAL ALLEGATIONS SUPPORTING A STATE CLASS ACTION

11. Plaintiffs bring this action as a class action pursuant to the Fed. R. Civ. P. 23 on behalf of a Class, consisting of all past, current and future Arizona and Nebraska residents who have purchased cooking or household products that are made with or contain Teflon.

12. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are thousands of members in the proposed Class.

13. There are common questions of law and fact in this matter that relate to and affect the rights of each member of the class and the relief sought is common to the entire class. Each member of the class has unresolved complaints against DuPont regarding their purchase of cooking and household products with Teflon coating.

14. The claims of the Plaintiffs who are representatives of the class, are typical of the claims of all members of the class, in that the claims of the class, including Plaintiffs, depend on a showing of the conduct and commissions or omissions by Defendant giving rise to the right of the Plaintiffs to the relief sought and arise from the same operative facts. The common questions include but are not limited to those set forth herein in paragraph 44.

15. There is no conflict between any individual named Plaintiff and other members of the class with respect to this action or with respect to the claims for relief herein set out.

16. The named Plaintiffs are representative parties for the class and are able to and will fairly and adequately protect the interests of the class. Each of the Plaintiffs is committed to being a

class representative and understands the attendant responsibilities, and has or can acquire the financial resources to assure the interests of the class will not be harmed.

17.     The attorneys for Plaintiffs are experienced and capable in the field of class action litigation and complex commercial litigation and have successfully represented claimants in other litigation of this nature. Plaintiffs' counsel will actively conduct and be responsible for Plaintiffs' case and has the financial resources to assure the class will be represented adequately.

18.     Prosecution of separate actions by individual members of the class will create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for Defendants. In addition, because each individual claim is potentially small, the cost of litigating each claim individually makes the use of a class action the best vehicle for the use of the parties' and the Court's resources.

19.     The questions of law and fact common to the members of the class predominate over any questions affecting only individual members and a class action is superior to other available methods for the fair and efficient adjudication of the issues.

## BACKGROUND FACTS

20.     DuPont invented Teflon in approximately 1938 and has been selling Teflon for over 50 years to be used on cooking and baking utensils and houseware products. Some of the products with Teflon coating include: cooking products, such as in pots and pans, stir fryers and woks, pizza pans, breadmakers, cookie sheets, griddle pans and skillets, waffle irons, deep fryers, crock pots, roasting pans, cake pans and molds, and other common cooking utensils and aids.

21.     Teflon is DuPont's trademarked name for the chemical polytetrafluoroethylene (PTFE).

22.  Perflourooctanoic acid ("PFOA") is a perflourinated detergent/surfactant that is manufactured, processed, and/or distributed by DuPont in connection with its manufacture of Teflon. PFOA is also sometimes referred to as C-8.

23.  PFOA is the chemical used to give Teflon its "non-stick quality."

24.  The production of Teflon constitutes a billion dollar industry with DuPont making a substantial profit from its sale of Teflon.

### A. *DuPont's Misleading Information Regarding the Use of Teflon*

25.  Throughout the years DuPont, through its Delaware office, has affirmatively taken steps to advertise and represent to consumers in public statements, press releases and on its websites that Teflon is safe for consumer use and has denied that the use of cooking products containing Teflon can be harmful to human health.

26.  DuPont has also recently released a press release reaffirming that the Teflon coating is safe and that "significant decomposition of the coating will occur only when temperatures exceed about 660 degrees F (340 degrees C). These temperatures alone are well above the normal cooking range."

27.  Despite this message to the public, DuPont has required its employees to wear respirators when working with Teflon heated to temperatures of 400F or higher while in poorly ventilated areas.

28.  Scientific experiments demonstrate that when cooking in the home, the surface of a Teflon coated pan can reach this temperature within 2 minutes using a conventional stove top burner set on high.

29.  DuPont studies also show that Teflon emits toxic particulates at 464F which can cause extreme lung damage to rats within 10 minutes of exposure. Longer exposure causes death.

30. Studies also show that at 680F Teflon coated pans release at least six toxic gases, including two carcinogens, two global pollutants, and MFA, a chemical lethal to humans at low doses.

31. At 1000F, (used for broiling and stove top drip pans) the non-stick coatings break down to PF1B, a chemical warfare agent, and a chemical analog of the WWII nerve gas phosgene.

32. Studies also show that at 680F the Teflon releases PFOA. In the past PFOA has been found to be a liver toxin in animals and it has been associated with other health concerns in animals, including cancer and developmental defects.

33. The EPA has recently identified significant human health concerns from exposure to PFOA and the EPA's Science Advisory Board has released a draft report suggesting that PFOA is a "likely carcinogen in humans." *See* EPA Report "Draft Risk Assessment of the Potential Human. Health Effects Associated with Exposure to Perfluorooctanoic Acid (PFOA)."

34. This EPA report and it's suggested findings were reached *only* after the EPA learned of test results that DuPont has kept from the EPA and the public for several years which documented adverse health effects and birth defects caused by exposure to PFOA.

35. PFOA has also been linked to several forms of cancer, organ damage and other negative health effects in tests on laboratory animals.

36. There also studies which indicate that exposure to PFOA may cause vascular disease and increased cholesterol levels.

37. DuPont, through its testing and manufacturing processes, has learned over the last several years that exposure to PFOA may cause birth defects in laboratory animals and DuPont has been aware that levels of PFOA have been found in the blood of DuPont's pregnant employees.

38. DuPont's tests also revealed that PFOA was present in the umbilical cord blood of at least one DuPont employee and in the blood of other workers' babies. Thus, DuPont knew or should have known from its studies that PFOA moved from the mother, through the placenta, to the fetus.

39. DuPont also had information documenting birth defects in the babies born to DuPont's female workers exposed to PFOA.

40. Despite DuPont's internal tests and documents linking adverse health effects and birth defects in humans due to exposure to PFOA, DuPont's executives have continually claimed that the use of Teflon in cooking products is completely safe.

41. The EPA's recent report contends that DuPont's newly disclosed human blood sampling information "reasonably supports the conclusion that PFOA presents a substantial risk of injury to human health" and that pregnant women exposed to PFOA could have fetuses with toxic effects from PFOA.

42. The EPA recently determined that DuPont's failure to disclose its 1981 blood sample data to the EPA constituted unlawful behavior and violated the Federal Toxic Substances Control Act.

43. As a result of DuPont's efforts to conceal information relating to the dangers of PFOA, DuPont is currently under investigation by the Justice Department's Economic Crimes Section regarding DuPont's use of PFOA and failure to disclose relevant information.

## CLASS ISSUES

44.     Based upon the alleged facts, there is a well-defined commonality of interest regarding the questions of law and fact affecting the Class. Questions of law and fact common to the Class, including, but not limited to the following:

(a)     Whether the class members purchased a cooking product made with or containing Teflon;

(b)     Whether DuPont, through its Delaware office, represented to the public that Teflon or the use of Teflon coated cooking products was safe;

(c)     Whether DuPont, through its Delaware office, has denied that Teflon or the use of Teflon coated cooking products can be potentially harmful to human health;

(d)     Whether DuPont knew or reasonably should have known based upon animal or human test data indicating potential adverse health effects from one or more of the chemicals found in Teflon that DuPont's Teflon products posed a risk to consumers;

(e)     Whether DuPont knew or should have known that the heating of Teflon coated cooking products can cause the release of substances harmful or potentially harmful to human health;

(f)     Whether DuPont breached its duty to consumers by failing to warn them or share information relating to potential dangers or risks of using the Teflon products;

(g)     Whether DuPont failed to adequately warn consumers regarding potential risks from using the Teflon products; and

(h)     Whether the class members have suffered damages.

45.     These common questions of fact and law demonstrate that a class action is appropriate for resolution of these claims.

## CLASS CLAIMS

### Count I: Violation of Delaware's Consumer Protection Act

46. Plaintiffs re-allege and reincorporate the allegations contained in paragraphs 1 through 45 above as if fully set forth herein.

47. This cause of action is brought pursuant to the Delaware Consumer Protection Procedures Act.

48. Under the Delaware Consumer Fraud Act, it is a violation, whether or not any consumer actually incurs damage, to in any way disseminate publicly any type of advertisement which employs any "deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission" in connection with the sale of any merchandise. 6 Del. C. §2513.

49. This action is brought on behalf of Arizona and Nebraska consumers who were mislead by DuPont's actions and/or statements and omissions which originated and were initiated in Delaware through DuPont's headquarters. This action seeks to remedy a wide-spread wrong for the public benefit of those consumers.

50. At all times relevant hereto, Defendant was subject to the Delaware Consumer Fraud Act.

51. Defendant's conduct as described herein was a false and deceptive practice in relation to the sale of merchandise that occurred in whole or part in Delaware within the meaning of the Delaware statute, in that Defendant, among other things, made representations and/or omissions regarding the potential risks associated with Teflon which had the capacity tendency, or effect of deceiving Plaintiffs and the Class; and failed to state material facts regarding these risks, the failure of which deceived or tended to deceive Plaintiffs and the Class.

52. Plaintiffs and the members of the Class entered into consumer transactions to purchase cookware coated with Defendant's Teflon product based upon DuPont's affirmative representations and omissions concerning the safety of Teflon coating.

53. Defendant's false statements made or initiated in Delaware contained in its advertising, marketing, and website media, that cookware items coated with its Teflon product were "safe" and were quality controlled through "rigorous" "testing," and other similar false statements by Defendant, could reasonably be found to have caused Arizona and Nebraska consumers to rely or act differently than they would have acted in the absence of such statements.

54. Likewise, Defendant's failure to disclose and to warn against the risks and dangers of its Teflon product, as alleged herein, could reasonably be found to have caused consumers to rely or act differently than they would have if presented with complete and truthful disclosures and warnings of the Teflon products' risks and dangers, in which case they may not have entered into their transactions to purchase Teflon coated cookware.

55. As a direct and foreseeable result of Defendant's conduct, Plaintiffs and the Class have been injured by paying for cookware that did not comport to the description of the product as offered by Defendant.

56. Defendant's acts, practices, and conduct, as outlined herein, constitute violations of the Delaware Consumer Fraud Act and invaded the rights of the Plaintiffs and the Class to be free from deceptive and unfair business practices.

57. All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is a part of the pattern of generalized course of conduct repeated on thousands of occasions daily.

58. As a direct and proximate result of Defendant's violations, Plaintiffs and the members of the Class are entitled to judgment under the Delaware Consumer Fraud Act and are entitled to (i)

an award of such actual damages and economic damages as they may prove; (ii) an award of punitive damages, (iii) an award of attorney's fees and costs, (iv) entry of an injunction against Defendant's use of their unlawful trade practices, (v) an Order allowing for the creation of a fund for independent scientific researchers to investigate further the potential adverse health effects to persons who have used cookware coated with the Teflon product, and (vi) requiring Defendant to refund all sums Plaintiffs and the members of the Class paid to purchase cookware coated in Defendant's Teflon product in Arizona and Nebraska during the Class Period or to disgorge all profits which Defendant made on account of such Teflon coated cookware sales to Plaintiffs and the members of the Class in Arizona and Nebraska during the Class Period.

WHEREFORE, Plaintiffs, on behalf of themselves and all other similarly situated, demand Judgment against DuPont and seek an award of damages, interest, costs, attorney fees, punitive damages and such other and further relief as this Court deems just and appropriate.

### Count II: Breach of Implied Warranty

59.     Plaintiffs re-allege and reincorporate the allegations contained in paragraphs 1 through 58 above as if fully set forth herein.

60.     DuPont designed, manufactured, assembled, distributed, marketed and sold Teflon for use in cooking products knowing that such products would be used without inspection for hazards or safety for consumers.

61.     At all times material hereto, the Teflon used in cooking products was in substantially the same condition as when it left the possession of DuPont with respect to the hazards and safety issues alleged herein.

62.     At all times material hereto, DuPont owed a duty to design, manufacture, assemble, inspect and/or test the Teflon it manufactured, processed, and distributed in such a manner and with

the exercise of reasonable care to prevent cooking products made with Teflon from releasing hazardous substances when heated.

63. DuPont has continually represented to consumers in public statements and documents, in press releases and on its website that there is no danger posed by Teflon or PFOA when using cooking products coated with Teflon and has denied that the use of cooking products coated with Teflon can be harmful to human health.

64. The Teflon manufactured, processed and distributed by DuPont, at the time it left the possession of DuPont, was hazardous and inherently dangerous for its intended use, and was unreasonably dangerous and presented and constituted a reasonable risk of danger and injury due to the emission of toxic substances when heated and the likelihood that Teflon contains carcinogenic substances.

65. As a direct and proximate result of the foregoing, the Plaintiffs, as consumers and third party beneficiaries, have been damaged.

66. As a direct and proximate result of the foregoing, Plaintiffs were subjected to the risk of the hazardous release of toxic substances from the use of cooking products containing Teflon.

WHEREFORE, Plaintiffs, on behalf of themselves and all other similarly situated, demand Judgment against DuPont and seek an award of damages, interest, court costs, attorney fees and such other and further relief as this Court deems just and appropriate.

### Count III: Negligent Failure to Warn

67. Plaintiffs re-allege and reincorporate the allegations contained in paragraphs 1 through 66 above as if fully set forth herein.

68. DuPont designed, manufactured, assembled, distributed, marketed and sold Teflon for use in cooking products knowing that such products would be used without inspection for hazards or safety for consumers.

69. At all times material hereto, the Teflon used in cooking products was in substantially the same condition as when it left the possession of DuPont with respect to the hazards and safety issues alleged herein.

70. At all times material hereto, DuPont owed a duty to design, manufacture, assemble, inspect and/or test the Teflon it manufactured, processed, and distributed in such a manner and with the exercise of reasonable care to prevent cooking products made with Teflon from releasing hazardous substances when heated.

71. DuPont had a duty to warn consumers or intended users of Teflon coated cooking products of the potential health hazards of Teflon and PFOA which it knew or should have known of in the exercise of ordinary care, which hazards rendered the subject cooking products unreasonably dangerous to use.

72. The Teflon manufactured, processed and distributed by DuPont, at the time it left the possession of DuPont, was hazardous and inherently dangerous for its intended use, and was unreasonably dangerous and presented and constituted a reasonable risk of danger and injury due tot he emission of toxic substances when heated and the likelihood that Teflon contains carcinogenic substances.

73. As a direct and proximate result of the foregoing, the Plaintiffs and the Class Members have been damaged.

WHEREFORE, Plaintiffs, on behalf of themselves and all other similarly situated, demand Judgment against DuPont and seek an award of damages, interest, court costs, and such other and further relief as this Court deems just and appropriate.

### COUNT IV: Injunctive Relief

74. Plaintiffs re-allege and reincorporate the allegations contained in paragraphs 1 through 73 above as if fully set forth herein.

75. DuPont has continually represented to its consumers that its products are safe despite the information DuPont has gathered relating to the health risks associated with Teflon and PFOA.

76. Plaintiffs seeks injunctive relief in that Plaintiffs seek an order for the Court requiring DuPont to issue adequate and full warning with its Teflon products to accurately inform and warn consumers of the dangers associated with the use of its products.

WHEREFORE, Plaintiffs, on behalf of themselves and all other similarly situated seek an injunction requiring DuPont to issue adequate and full warnings for its Teflon products and such other and further relief as this Court deems just and appropriate.

### COUNT V: Restitution and Disgorgement for Unjust Enrichment

77. Plaintiffs re-allege and reincorporate the allegations contained in paragraphs 1 through 76 above as if fully set forth herein.

78. DuPont has continually represented to its consumers that its products are safe despite the information DuPont has gathered relating to the health risks associated with Teflon and PFOA.

79. DuPont failed to share or hid the information at its disposal regarding risks and health concerns associated with the Teflon coating.

80. DuPont has unjustly and inequitably benefited from its misleading actions and omissions.

81. Plaintiffs and the Class Members were unjustly deprived of their property when they made payments for Teflon products.

WHEREFORE, Plaintiffs, on behalf of themselves and all other similarly situated seek restitution and disgorgement of the amounts Plaintiffs and the Class have paid to Defendant due to its misleading practices and omissions and such other and further relief as this Court deems just and appropriate.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all claims in this Complaint.

DATED: May 17, 2006

Respectfully submitted,

*/s/ A. Zachary Naylor*

Pamela S. Tikellis (#2172)
Robert J. Kriner, Jr. (#2546)
A. Zachary Naylor (#4439)
CHIMICLES & TIKELLIS LLP
One Rodney Square
P.O. Box 1035
Wilmington, DE 19899
Telephone:   302/656-2500
Facsimile:    302/656-9053
*Local Counsel*

Glenn L Norris   (PK0004035)
HAWKINS & NORRIS
2501 Grand Avenue, Suite B
Des Moines, Iowa 50312
Telephone:        515/288-6532
Facsimile: 515/288-9733
*Attorney for Plaintiffs*

%JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
HARRELL E. BRANNAN, THOMAS PTACEK, FORBES ROBERTSON III, and CARMEN PEARSON, Individually and on behalf of all others similarly situated

(b) County of Residence of First Listed Plaintiff  Maricopa County, AZ
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) Attorney's (Firm Name, Address, and Telephone Number) A. Zachary Naylor, One Rodney Square, P.O. Box 1035 Wilmington DE 19898; (302) 656-2500

## DEFENDANTS
E.I.DUPONT DE NEMOURS & COMPANY

County of Residence of First Listed Defendant  New Castle Cty, DE
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)
- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | **PERSONAL PROPERTY** | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☒ 370 Other Fraud | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C.A. 1332

Brief description of cause:
Consumer Protection Violation

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE                    DOCKET NUMBER

DATE  5/17/2006
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**
RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. __06 - 321__

# ACKNOWLEDGMENT
# OF RECEIPT FOR AO FORM 85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF __2__ COPIES OF AO FORM 85.

__5/17/06__
(Date forms issued)

__Danny P Randolph Jr__
(Signature of Party or their Representative)

__DANNY P Randolph JR__
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action